IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MIRANDA LYNN PAREDES,

        Plaintiff,

      v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER of
Social Security Administration,

        Defendant.

Civil No. 1:13-cv-01570-AC

OPINION AND ORDER

        ARTHUR W. STEVENS III
        Black, Chapman, Webber & Stevens
        221 Stewart Ave., Suite 209
        Medford, OR  97501

              Attorneys for Plaintiff

        S. AMANDA MARSHALL
        United States Attorney
        RONALD K. SILVER
        Assistant United States Attorney
        1000 SW Third Avenue, Suite 600
        Portland, OR  97204

1 - OPINION AND ORDER -

LISA GOLDOFTAS
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

ACOSTA, Magistrate Judge.

     Plaintiff Miranda Lynn Paredes ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636 (e). For the reasons explained below, the Commissioner's decision is REVERSED and the case is REMANDED for an immediate award of benefits.

## PROCEDURAL BACKGROUND

     Plaintiff filed an application for DIB and SSI on January 15, 2009. In her application, Plaintiff alleged disability beginning August 31, 2003. The Commissioner denied Plaintiff's application initially and on reconsideration. Plaintiff appeared at a hearing before Administrative Law Judge John D. Moreen (the "ALJ") on January 17, 2012, and April 10, 2012. During the course of the hearing, Plaintiff's attorney amended the onset date to July 1, 2009, which the ALJ

2 - OPINION AND ORDER -

acknowledged on the record.[1] (Tr. at 81). On April 25, 2012, the ALJ issued his decision finding Plaintiff was not disabled.

On May 25, 2012, Plaintiff submitted a Request for Review of the ALJ's decision. (Tr. 20-21.) On July 2, 2013, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-6). Plaintiff now seeks review by this court of the ALJ's unfavorable decision.

## FACTUAL BACKGROUND

Born in 1980, Plaintiff was 23 years old on her initial alleged onset date, and 29 years old on the amended alleged onset date. Plaintiff alleges disability due to post traumatic stress disorder, depression, anxiety disorder, and arthritis. (Tr. 255.) Plaintiff speaks English, has a GED and one year of college, and past work experience as a customer service associate, medical assistant, patient registrar, and receiving clerk. (Tr. 33.)

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its]

---

[1]The ALJ's subsequent written decision erroneously reflected the original alleged onset date of August 31, 2003.

3 - OPINION AND ORDER -

judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920, First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant

4 - OPINION AND ORDER -

can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the

Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the

claimant can perform other work. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).

If the Commissioner meets this burden and proves that the claimant is able to perform other work

which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ engaged in the five-step "sequential evaluation" process when evaluating

Plaintiff's disability as required by 20 C.F.R. §§ 404.1520(a) and 416.920(a). At step one, the ALJ

determined Plaintiff engaged in substantial gainful activity during the periods of January 2005 to

April 2010, but that there was a continuous twelve-month period thereafter during which Plaintiff

did not engage in substantial gainful activity. At step two, the ALJ determined Plaintiff has the

following severe impairments: "bipolar disorder not otherwise specified; anxiety disorder not

otherwise specified; and alcohol abuse (rule out)." (Tr. 28) (citations to the record omitted).

At step three, the ALJ determined Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526,

416.920(d), 416.925, and 416.926. (Tr. 29). The ALJ concluded Plaintiff has mild restriction in

activities of daily living and mild difficulties in social functioning, but moderate difficulties with

regard to concentration, persistence, or pace. (Tr. 29-30.) The ALJ also found no evidence Plaintiff

experienced any episodes of decompensation. (Tr. 30.)

The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to simple, routine, repetitive tasks with occasional contact with others." (Tr. 30).

At step four, the ALJ determined Plaintiff is unable to perform past relevant work. At step five, however, the ALJ concluded that when considering Plaintiff's age, education, work experience, and RFC, Plaintiff can perform work existing in significant numbers in the national economy. (Tr. 34.) The ALJ relied on the testimony of vocational expert ("VE") Jane Haile. (Tr. 33-34.)

## DISCUSSION

Plaintiff argues the ALJ erred in four respects: (1) by rejecting Plaintiff's subjective symptom testimony without making specific findings stating clear and convincing reasons for doing so; (2) by improperly rejecting the lay witness testimony of Plaintiff's mother, without giving specific reasons germane to the lay witness; (3) by failing to recontact a medical source to obtain the information needed to resolve a conflict or ambiguity, when finding the medical source's opinion contained a conflict or an ambiguity that must be resolved in order to reach a determination of whether the Plaintiff was disabled; and (4) by basing his decision on the opinion of the VE based upon an incomplete hypothetical which failed to accurately reflect Plaintiff's condition, and by disregarding the VE's answer when questioned concerning Plaintiff's actual condition as evidenced by the record.

## I.   Rejection of Plaintiff's Symptom Testimony

Plaintiff contends the ALJ erred by providing inadequate justification for rejecting Plaintiff's testimony regarding the severity of her symptoms causing her mental limitations.[2] The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A general assertion that the plaintiff is not credible is insufficient; the ALJ "must state which [subjective symptom] testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.*

Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistent statements, daily activities inconsistent

---

[2]Plaintiff also addresses the physical limitations dismissed by the ALJ, but the Court notes that in her testimony at the administrative hearing Plaintiff affirmatively stated that *only* her psychological issues were precluding her from working, and that she could otherwise work. (Tr. 72.)

with the alleged symptoms, a sparse work history, or testimony that is vague or less than candid. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Inconsistencies in a claimant's testimony, including those between the medical evidence and the alleged symptoms, can serve as a clear and convincing reason for discrediting such testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Failure to seek medical treatment may also be a clear and convincing reason to reject a claimant's subjective statements. *Burch*, 400 F.3d at 681; *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989); see also SSR 96-7p, 1996 WL 374186 (July 2, 1996).

Credibility determinations are within the province of the ALJ. *Fair*, 885 F.2d at 604 (citing *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988)). Where the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, the role of the reviewing court is not to secondguess that decision. *Id.*

Here, The ALJ found the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but he found the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her mental symptoms not credible because: (1) the examining consultative psychologist did not observe any evidence of depression or anxiety and the Plaintiff's thought process and content were intact; (2) the Plaintiff's overall treatment history is inconsistent in that she sought psychiatric treatment on only four occasions over a two year period and progress notes indicated her condition was under good control with medications; and (3) her daily activities are inconsistent with the severity of Plaintiff's symptoms. The ALJ also stated the

Plaintiff has a history of alcohol use and aggression and noted an instance in December 2008 when Plaintiff was intoxicated and got into an altercation with the police, who ultimately tased and physically restrained her.

## A.    Examining Psychologist Edwin Pearson, Ph.D.

First, the ALJ found that Plaintiff's testimony regarding her mental limitations was inconsistent. Specifically, the ALJ rejected Plaintiff's credibility because examining psychologist Edwin Pearson, Ph.D. "did not observe any evidence of depression or anxiety, and the claimant's thought process and content were intact," and "[i]n addition, on testing, [Plaintiff] obtained a score of 30/30 on the Mini-Mental State Examination, and [Dr. Pearson] determined that she had at least average general intelligence." (Tr. 31.) Based on this isolated finding from Dr. Pearson, the ALJ concluded Plaintiff's substantiated mental impairments are fully accommodated by limiting the Plaintiff's RFC to simple, routine, repetitive tasks with occasional contact with others.

The ALJ did not, however, account for statements in Dr. Pearson's report which appear to contradict the ALJ's conclusion. While Dr. Pearson did not observe evidence of depression or anxiety *during the examination itself,* he described Plaintiff as a "thirty-year old with a believable history of significant mental health problems, i.e., bipolar disorder, posttraumatic stress disorder, and panic attacks with and without precursors." (Tr. 684.) Dr. Pearson further assessed Plaintiff as "believable in describing an interest in working and feelings of frustration with herself that she has not been able to keep fairly well paying jobs as a medical assistant in at least three different facilities because of what she described as bouts of depression." (Tr. 684.) Finally, Dr. Pearson noted that Plaintiff was receiving mental health treatment through psychiatrist Lisa Bailey, M.D.,

and that it "would certainly be useful to obtain impressions and diagnoses from this individual." (Tr. 684.)

The fact that Dr. Pearson did not observe any evidence of depression or anxiety during his examination does not contradict Plaintiff's testimony that she experienced episodic bouts of depression and anxiety. Plaintiff testified she had good days where she was able to function normally, when she was "really up" and would "clean the house" and "be up and doing things." (Tr. 68.) These periods could last "like, three days at a time," but, "then it could be two weeks to where I just don't want to leave my room, or can't." (Tr. 68.)

In addition, in citing only the isolated finding from Dr. Pearson's report, the ALJ failed to address myriad other pieces of medical evidence in the record of Plaintiff's depression and anxiety. On November 18, 2008, Plaintiff's treating psychiatrist S. Michael Sasser, M.D., noted Plaintiff's mood had been more down and that she has days when she feels depressed and does not get out of bed. (Tr. 414.) Dr. Sasser also found Plaintiff's panic disorder was under good control at that time with Cymbalta and Ativan (Tr. 415.)

On July 3, 2009, Dr. Sasser saw Plaintiff and reported that Cymbalta was not helpful and that Plaintiff had been hypersomniac, withdrawn, and lacked motivation and drive. (Tr. 530-31.) In his assessment he discussed numerous medications that may be tried to help with her apparent mood disorder. (Tr. 530-31.)

On April 27, 2010, Dr. Lisa Bailey, M.D., noted Plaintiff's depression. Dr. Bailey noted symptoms including guilt over Plaintiff's murdered daughter, lack of energy and motivation, crying spells, insomnia, anxiety including panic attacks, and a history of drinking to get to sleep. (Tr. 682-

83.) Dr. Bailey noted Plaintiff's prescriptions for Celexa and Paxil prescribed by an emergency

room doctor, plus Ativan for sleep. Dr. Bailey noted Cymbalta did not help. (Tr. 682-83.)

On February 8, 2011, Plaintiff was treated at the Community Health Center by Cynthia

Mosser, FNP, for major depression, recurrent (primary encounter diagnosis); mood disorder; PTSD

(post-traumatic stress disorder); and anemia. (Tr. 754-56.) Kathy Cook, MA, and FNP Mosser

reported Plaintiff presented with increased anxiety and depression; her symptoms included sadness,

not wanting to get out of bed, difficulty falling asleep, no interest in doing anything, not working,

and not getting out at all. (Tr. 754-56.) FNP Mosser noted "[d]epression has not been good for two

years. Has ups and downs. Sleep is not good. Although she is 'able to control anxiety attacks, she

still has 2 a week.'" (Tr. 754.) The treatment plan included referral to psychiatry, and others.

Plaintiff also received treatment for her depression and anxiety disorder from her primary

physician over the course of several years. On March 12, 2007, Plaintiff reported increased anxiety

attacks to Molly Gramly M.D., who prescribed Ativan and increased Plaintiff's Paxil prescription.

(Tr. 407.) On March 21, 2007, FNP Lynn Sullivan examined Plaintiff for her anxiety disorder and

increased Plaintiff's Paxil prescription; she also discussed the possibility of trying anti-anxiety

medication Celexa if Ativan was not working. (Tr. 404.) On October 4, 2007, Plaintiff was seen

at the Community Health Center for depression and anxiety. (Tr. 401.)

From September 3, 2008, through January 7, 2010, Plaintiff received treatment on numerous

occasions from Dr. Paul Jendre, M.D., at Phoenix Family Practice. Dr. Jendre treated Plaintiff

repeatedly for her anxiety and depression over this period of time. (Tr. 496-525, 632-666.)

On March 21, 2010, Plaintiff resented at the Rogue Valley Medical Center Emergency Department for a psychiatric evaluation. (Tr. 573.) Plaintiff reported profound depression, and the Emergency Department physician prescribed Celexa. (Tr. 573-74.)

## B.    Treatment History

The ALJ also found Plaintiff's overall treatment history to be inconsistent with her allegations. The ALJ notes Plaintiff sought psychiatric care on only four occasions from November 18, 2008, through April 27, 2010. (Tr. 31.) The ALJ did not, however, address the fact that Plaintiff's prescription medications for her mental impairments were also being prescribed by her treating physician, or that Plaintiff sought mental health care elsewhere. Nor did the ALJ address Plaintiff's testimony concerning the difficulties of obtaining psychiatric care given her financial situation and the constraints of the Oregon Health Plan, her insurance provider. (Tr. 60.) In any event, the Ninth Circuit has "criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously under-reported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

The ALJ also found "it is significant that overall progress notes indicated that her condition was under good control with the medications," and that Plaintiff alleged medication side effects that were not reflected in treatment notes. (Tr. 31-32.) In fact, the record reflects numerous prescription changes because Plaintiff's medication regime was not effective in controlling her depression and anxiety.

Moreover, with respect to the alleged side effects, the Plaintiff completed a form Disability Report at the outset of her disability application on which she was asked to list her prescription medications and side effects. (Tr. 261, 269.) The Plaintiff indicated on the form that for pain relief she used hydrocodone, which sometimes caused drowsiness, or Norco, which caused nausea. (Tr. 261, 269.) The ALJ cites this evidence, and states "if the side effects were so severe as to affect her tolerance for the use of the medications, I would expect that she would inform her doctor, who would then cease or change them. . . . [n]otably, however, these complaints are not reflected in the treatment notes." (Tr. 32.) The record contains no entries that the side effects Plaintiff listed in the Disability Report "were so severe as to affect her tolerance for the use of the medications." Moreover, the fact that treatment notes do not reflect specific complaints of the side effects is not inconsistent with the fact that they occurred; as Plaintiff argues, there is no information as to whether these were anticipated side effects of which Plaintiff had notice from her doctor or otherwise.

## C.    Daily Living Activities

Finally, the ALJ found Plaintiff's daily activities are inconsistent with her alleged degree of impairment. Specifically, the ALJ noted that both Plaintiff and her mother stated she was able to care for her adolescent daughter, including dressing her, walking her to school, and helping with her homework. (Tr. 32.) He also noted that they also reported that Plaintiff "did household chores and cooked, although at the hearing she stated that she rarely cooked. . . . [s]he shops in stores, has friends, and spends time with others." (Tr. 32) (citations to record omitted). Plaintiff argues the

ALJ erred in finding her daily activities were inconsistent with her alleged degree of impairment because the ALJ failed to take into account the episodic nature of Plaintiff's depression.

The ALJ erred by failing to properly consider Plaintiff's testimony regarding her daily activities. The Ninth Circuit has warned that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain [or other symptoms], because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Accordingly, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Id.*

In this case, Plaintiff can and does perform the daily activities cited by the ALJ, but only when she is not experiencing episodes of depression. The ALJ failed to take into account Plaintiff's evidence that when in the throes of a depressive episode, she did not participate in daily activities at all. As Plaintiff testified, she has "deep depressions to where I'll sleep basically, for like two weeks. I won't get out of bed. And I can't–I want to, but I can't." (Tr. 61.) In a May 30, 2009, "function report" Plaintiff completed for her application, she described three kinds of days: days she can get out of bed, days she can't get out of bed, and "work days." (Tr. 317.) As she stated, on days she cannot get out of bed she sleeps, she eats a meal around five p.m., she goes back to bed. (Tr. 317.)  Because the ALJ failed to take into account the episodic nature of Plaintiff's

14 - OPINION AND ORDER -

impairment, Plaintiff's activities of daily living is not a sufficient reason for finding her not credible.

The ALJ concludes his assessment of Plaintiff's credibility as follows:

> These factors suggest that the claimant's condition is not as severe as she alleged. Indeed, the claimant has a history of alcohol use and aggression. In December 2008, she was intoxicated and got into an altercation with the police, who ultimately tased and physically restrained her.

(Tr. 32.) The record contains no indication Plaintiff provided inconsistent statements about her alcohol use, and at the hearing Plaintiff testified that she no longer drank alcohol, and had not had any in the prior two years. (Tr. 63-64.) Plaintiff was candid when asked about the incident referenced, which arose from an altercation with the father of Plaintiff's murdered child. Under the circumstances of this case, the fact that Plaintiff was involved in an isolated incident with the police, without more, does not support the ALJ's rejection of Plaintiff's credibility. *See Schwanz v. Colvin*, 2014 WL 4722214, *16 (D.Or., Sept. 22, 2014) (ALJ erred in relying on criminal history in discounting claimant's credibility; fact that claimant had committed robbery and possessed cocaine did not bear directly on the credibility of his complaints about his physical and mental limitations).

II.   Rejection of Lay Witness Testimony

Plaintiff also argues the ALJ improperly rejected the lay testimony of her mother, Brenda Drew. On May 29, 2009, Drew answered a questionnaire which stated Drew observed that Plaintiff exhibited "lots of anxiety, panic attacks, depression" and that she "seems depressed more often than not." (Tr. 314-15.) On June 25, 2010, Drew submitted a follow-up letter which went into more detail:

15 - OPINION AND ORDER -

> [Plaintiff's] mental disorders are severely affecting her life. She is unable to hold a job for more than a few months due to her disorders. Her depression seems to be worse than I have seen it. She is barely able to get out of bed on most days and tries to get back to bed as soon as she can. She has withdrawn from many of her friends and family. She has hard time focusing and following through. She has a hard time prioritizing her responsibilities.

(Tr. 355.)  Drew also stated she grew up with a father who was bipolar, so she knew how debilitating a mental illness can be, and that Plaintiff had told Drew that her ultimate goal was to get better and "be as normal as she can and live a productive life." (Tr. 355.)

The ALJ discredited Drew's statements about Plaintiff because "since [Drew] is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of her statements is questionable." (Tr. 33.)  The ALJ further rejected Drew's statements because of her relationship to Plaintiff:

> [A] family member can only report her observations of the claimant and these observations may not be reflective of her maximal capacities. Moreover, by virtue of her relationship to the claimant, this declarant cannot be considered a disinterested third party whose statements would not tend to be colored by affection for her and the natural tendency to agree with the symptoms and limitations she alleges.

(Tr. 33.)

An ALJ must provide "germane reasons" for rejecting lay testimony.  20 C.F.R. § 404.1513(d)(1); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.  Inconsistency with other evidence in the record is a germane reason for

16 - OPINION AND ORDER -

'rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511. It is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122.

The Commissioner correctly does not rely here on the ALJ's observation that Drew was a family member as a basis upon which to judge her credibility. *See Smolen*, 80 F.3d at 1289 ("[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony . . . [t]o the contrary, testimony from lay witnesses who see the claimant every day is of particular value"). Drew's lack of medical expertise is also not a legitimate basis upon which to discredit her statements. *See Dhillon v. Astrue*, 2013 WL 705470, *10 (D. Or. Jan. 30, 2013) (lack of medical expertise is not a sufficient reason for discounting lay testimony because by definition all lay testimony is given by those who lack medical expertise) (citing *Molina*, 674 F.3d at 1114). Further, the ALJ's assertion that Drew's observations "may not be reflective of [Claimant's] maximal capacities" is not germane to the issue whether Plaintiff's mental limitations render her unable to work.

The Commissioner argues the ALJ implicitly rejected Drew's lay witness evidence for the same reason he rejected Plaintiff's testimony, *i.e.*, because it was not fully consistent with the medical opinions and other evidence. Inconsistency with medical evidence is a germane reason sufficient to discredit lay witness testimony. *Bayliss*, 427 F.3d at 1218. However, as discussed above, the ALJ did not adequately support his rejection of Plaintiff's testimony in relying on an isolated statement from Dr. Pearson's report.

### III.    VE's Opinion Based Upon an Incomplete Hypothetical

Plaintiff further argues the ALJ erred by basing his opinion on the opinion of the VE based on an incomplete hypothetical which failed to accurately reflect Plaintiff's condition and by disregarding the VE's answer when questioned concerning Plaintiff's actual condition as evidenced by the record.  The ALJ proposed the following hypothetical to the VE:

> I want you to assume a hypothetical individual with the same age, education, and background with the following limitations:  that such an individual would be limited to performing simple, routine, repetitive tasks with occasional contact with others.

(Tr. 83.)  The VE testified that while such an individual could not perform Plaintiff's past work, there were other jobs such an individual could perform in the local or national economy.  (Tr. 83.)

On cross-examination, Plaintiff's attorney proposed the same hypothetical, with the additional limitation that the individual would regularly be off-task for up to a third of the day through being distracted.  (Tr. 85.)  The VE testified that would eliminate a person's ability to sustain employment.  (Tr. 85.)  Likewise, when Plaintiff's attorney proposed the additional limitation that the individual was to be absent "two days a month regularly, or more than one day a month regularly" the VE testified the person would not be employable.  (Tr. 85-86.)

As discussed above, had the ALJ given proper credit to Plaintiff's symptom testimony and the other evidence in the record, Plaintiff's RFC would have contained additional limitations regarding her limited ability to stay on-task and the likelihood that she would have frequent absences from work.  As such, the ALJ erred in failing to include those limitations in the hypothetical posed to the VE.

18 - OPINION AND ORDER -

IV.     Remand[3]

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert.*

*denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).  The issue turns on the utility of

further proceedings.  A remand for an award of benefits is appropriate when no useful purpose

would be served by further administrative proceedings or when the record has been fully developed

and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r of Soc.*

*Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).  The court may not award benefits punitively and

must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act.  *Id.*

Under the "crediting as true" doctrine, evidence should be credited and an immediate award

of benefits directed where "(1) the ALJ failed to provide legally sufficient reasons for rejecting the

evidence; (2) there are no outstanding issues that must be resolved before a determination of

disability can be made; and (3) it is clear from the record that the ALJ would be required to find the

claimant disabled were such evidence credited." *Id.*  The "crediting as true" doctrine is not a

mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter

an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d

871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348).  The reviewing court declines to credit

testimony when "an outstanding issue" remains. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir.

2010).

---

[3]Because the Court finds the record supports a finding that Plaintiff is disabled, the
Court need not address Plaintiff's argument that the ALJ should have re-contacted Dr.
Pearson or Dr. Bailey to obtain additional information.

As explained above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony and Brenda Drew's evidence. Although Plaintiff may have had the exertional ability to perform light work, the erroneously rejected evidence establishes that the symptoms and limitations related to Plaintiff's depression and anxiety disorder would include excessive absenteeism and the inability to stay on-task for extended periods of time. If the ALJ had not rejected Plaintiff's and her mother's evidence, Plaintiff's RFC would have included non-exertional limitations which, if they had been included in the hypothetical, the VE testified would preclude employment in any job in the national economy. As such, no outstanding issues must be resolved before a determination of disability can be made.

It is clear from the record that Plaintiff cannot competitively preform any jobs that exist in the national economy. The ALJ's decision is therefore reversed, and this case is remanded for immediate payment of benefits.

## CONCLUSION

For these reasons, the Commissioner's decision that Plaintiff is not disabled is REVERSED and this case is REMANDED for benefits.

IT IS SO ORDERED.

DATED this 16th day of March, 2015.

John V. Acosta
United States Magistrate Judge